I'm not sure if I'm pronouncing that right, but hopefully somebody will correct me. Thank you. Alright, Ms. Barth, you've reserved one minute for rebuttal. So that keeps you nine out of the game. You may proceed. Good morning, your honor. May it please the court. Mr. Redzepagic, and that was pronounced correctly, was convicted of attempting to provide material support to a terrorist organization. When he was sentenced, the district court used 2M5.3, the guideline for a completed offense, rather than 2X1.1, the default attempt guideline. But it ultimately doesn't matter, right? I mean, whether it's a level 37 or a level 34, the guidelines came in above, the bottom of the guidelines came in above the statutory maximum. So under the guidelines, the guideline sentence would be the same under either application, right? It would be a 24, a 240 month sentence, right? Well, it is true that the court would have set the applicable guideline range to the stat max, even if it had applied the three levels up. But taking into account- That is the guidelines range, right? Under the guidelines, the guidelines range is either the range under the offense level and criminal history category that results in a chart with a range, or if the statutory maximum is lower than that, then the guidelines range, the guidelines sentence, is the maximum sentence. Correct? That is correct. However, before taking into account the statutory maximum sentence, Mr. Redzapajic would have ended up at a total offense level of 34. And while that guideline remains higher than the adjusted range of 240 months, it was much lower than what the sentencing court believed it to be at 360 to life prior to that adjustment. And that lower guideline level would have been important to the judge, because the judge talked about how 360 to life would have otherwise applied, but for the statutory maximum. But the judge also understood that there was a statutory maximum. So even if the judge thought the proper guideline would have been a certain level, the judge also understood that at the end of the day it didn't matter, that it was going to be no more than 240. I understand that, and I understand the point. But while the court may have ultimately landed on the correct guideline after adjusting for the statutory maximum, figuring out what guideline provision applies to the defendant's conduct is a really important first part of the guideline step-by-step process. Arguably, it is the most important part in that process, because it dictates any adjustments that follow. It is a foundational step. And when a- Can I ask, I think you're talking about sort of this anchoring effect that we've talked about, right? That creates the framework in which the rest of the sentence is determined. Is the weight that we would give to that concern about an anchoring effect the same under plain error review as it would be under a harmless error standard? Well, I don't know that we can say that it would be the same, because there are two different standards of review. But in this circuit, when a judge selects the wrong guidelines provision, this court remands unless there is a clear statement from the sentencing court that the defendant's sentence would not change. And here, the district court did not make statements indicating that the 200-month sentence it imposed was one, the only appropriate sentence, even if it had found the correct guideline, or no matter the guidelines. The court found the correct guideline. You're saying that the math before finding the correct guideline was faulty. That's really what you're arguing, right? Yes, but I'm also arguing that- that the person's in criminal history category six a number of different ways, but the judge relied on a fact that made him four points above the threshold for six, and that created an anchoring effect that would then be deemed to have affected the substantial fairness of the proceeding. I think that the case, the Lechman case cited by both parties, is a good example of that. The court has only upheld mistakes like this one when the district court's statements assured it that the same sentence would have been imposed regardless of any reduction. And I think also DORVI stands for the proposition that the amount by which a sentence deviates from the applicable guideline range is not the measure of how reasonable a sentence is. So- But those are not plain error cases, just to be clear, right? I don't recall if DORVI was a plain error case. So you're saying that the court should have spotted something that defense counsel didn't object to and said I would have done it- I would have done the same sentence either way. And not doing that is a plain error. Well, yes, because- That's what I mean. It has to be what you're saying, I think. And it is, because that is what the guidelines require. The guidelines require that 2X1.1 applies to this particular crime. And that was found first by this court in Amato. And in Amato, the court actually stated that- I'm sorry, I'm getting a point confused here. The plain language of the guidelines says 2X1.1 applies. And so the court plainly erred when it didn't consider the plain language of that statute. On top of the plain language of that guideline provision, we also have Amato that interpreted that guideline provision, too. So I think it meets that plain error standard that the court should have been on notice that this particular guideline applied. The guideline language that you're referring to, the 2X1.1, is there's a split in the circuits, albeit most circuits finding that it doesn't matter that the guideline provision say if attempt or conspiracy is not in the- if there's no specific guideline provision applying for conspiracy or attempt, that there's a three-level reduction. There seems to be a split in the circuits. And I hear your point that Amato does say that the interpretation of 2X1.1 does not- turns on the guidelines section, not on the statutory provision, whether the statutory provision contains an attempt provision or conspiracy. But you would agree that Amato sort of veered off and was really decided on the fact that the guideline provision itself had changed, correct? Yes. So it's, in essence, the dicta in Amato that you're claiming supports your position that 2X1.1 should be read to apply when there's no specific guideline provision containing attempt or conspiracy, even if the statute does contain that language? I don't think it's dicta. I think it's reasoning. And the reason I think it's reasoning is because Amato is taking a look at another case by this court, Skowronski. And in Skowronski, the panel looked at the statute instead of the guidelines provision, which is also the argument that the government is making in its brief. Amato looked at that and said, after all, the determinative passage in 2X1.1C makes this turn not on the content of the criminal statute in question, but rather on whether the guidelines assign the particular class of conspiracy, because that case dealt with conspiracy rather than attempt, to a section other than the general conspiracy section. Right. But, I mean, the argument wasn't made, but I suppose could be made, that the guidelines appendix makes a determination as to whether this statute, which includes conspiracies and attempts, falls under 2X1.1 or just the substantive guideline. There is an appendix to the guideline that doesn't reference Section 2X for this offense, right? Well, no. The guideline itself says you look to the guideline provisions. You don't look outside to the U.S. Code to determine the extent. The appendix is not part of the guidelines. Is that what you're saying? No, the appendix is definitely part of the guidelines, but 2X1.1 is obviously the generic default attempt, unless there are expressed provisions in the guidelines that account for a different provision that should apply. For this particular offense, that's attempt to provide material support to an FTO, there is no separate express guideline provision. There's nothing in the notes to the commentary that would indicate that anything other than 2X1.1 applies. What the government does in its argument is it looks to the statute. It says the word attempt and says, okay, this makes 2M5.3 apply, and that's not what the plain language requires. We don't look at the U.S. Code to determine the extent to which a guideline provision applies to an attempt crime. I understand the argument. I think my point was a subtler one, just whether or not you look, whether there's any argument that you look to the appendix of the guidelines to figure out whether that determination has been made. In other words, some sections in the appendix, some references to statutes do reference Section 2X, and this one does not. You would agree with that characterization? Yes, but 2X1.1 requires that you do look to establish base offense level, what the substantive base offense level is. That's your starting point with 2X1.1. So there is that reference to the appendix in the more subtle manner, I think, that you were trying to address with me. Did I answer that question? Look, I think this is uncharted waters is the point. Neither Amato deals with this. Certainly the district court had no opportunity to deal with this because no one argued it. That's true. That's why it's on plain air review. However, I do think Amato very clearly stands for the proposition you don't look at the criminal conduct. You do apply 2X1.1. And on top of that, you have the plain language of the sentencing guideline itself. And it would be incumbent on the district court, even if the parties didn't raise it, to use the basic rules of statutory construction, which includes plain language. Thank you. You've got a minute for rebuttal that you've reserved. We'll hear from Mr. McConnell for the government. Your Honors, good morning. May it please the court, Artie McConnell. I represented the government below. The sentencing court applied the appropriate guideline in this case in finding the base offense level. The district court also thoroughly considered all relevant case law. Wait, I just want to make sure I'm understanding. I mean, the guideline sentence was 240 months. I don't think there's any question about that. Ms. Barth, I think, agreed with that. Her argument is that it matters whether or not the total offense level is 37 or 34. In other words, application of the conspiracy provision in section 2X. Is it your position that Amato doesn't apply here and that the total offense level should have been 37? So I don't think Amato stands for the proposition that counsel is advocating for here. I think Amato rejected the result in Skowronski but not the approach. Amato was predicated on the deletion of a particular guideline sentence. I believe it was 2E1.5 and a particular cross reference. But the approach that this court adopted in Skowronski, I think, was not disturbed. And essentially, if the guidelines expressly cover a statutory section, and that section expressly prohibits an attempt or a conspiracy, then that guideline should apply. That section of the code. Correct. But in this case, we're not simply just referring back to the statutory language of the crime. As Your Honor noted, Appendix A of the guidelines explicitly require the application of 2M5.3. The commentary of 2M5.3 also expressly lists the statute of conviction in this case. So the district court was correct to apply 2M5.3. That being said, there's no need. Yes, Your Honor. Now we're getting sort of into the commentary. And I've been trying to sort this out because if you look at the commentary to 2X1.1, it lists the other sections that expressly cover attempts. And it doesn't include 2M5.3. Well, I think the commentary in 2X1.1 is significant because it does refer to specific statutes, but it does not reference 2339B because 2339B is covered not only by the appendix, Appendix A, but also by the commentary for 2M5.3. But if we take 2X1.1, the text, on its terms, the relevant point of reference is whether there's another guideline section that expressly applies. And so then when you go to the commentary that expands on what that means, it specifically doesn't list 2M5.3 as a section that expressly covers attempts. So that would suggest that you're back in the general default rule for attempts. And that's what I'm struggling with here. So I think if you accept that approach, Your Honor, I think you then turn to the methodology in the Skowronski case where this court found that if conspiracy or attempt is covered by a guideline that applies to a particular statutory section and that statutory section prohibits attempt or conspiracy, then that guideline would apply. It takes it out of the ambit of 2X1.1. Although the guideline on its face, I mean, it's true that the statute is among the statutes that can be within that ambit of what the guideline covers. But this isn't a guideline that purports to cover, be coextensive with that statutory provision. It's a guideline that has its own definition of the conduct that's applicable. And it's very clear that it applies to offenses that involve the provision of funds or other material support, not attempts. And so I'm just trying to figure out how we get out of this. How do we get to 2M5.3 as the proper provision without ignoring the very text of 2M5.3? I don't think it's ignoring it, but I think you need to consider also Appendix A and 2M5.3's commentary as well. But the larger point, I think, is that the court need not reach this issue. Certainly, proper calculation of the guideline is important. And how you arrive at 240 months is important. However, we are on plain error. There's a circuit split on this interpretive issue. And so I think by definition that means there cannot be plain error in this situation. Well, my question is precisely on, you know, and I understand most circuits follow what your opponent is proposing. But what are we to do with the Amato decision? And I agree with you. That decision turned on the revision to the guidelines themselves and the elimination of a particular guideline section. But the court does say, and I asked your opponent about this, the determinative passage of 2X1.1 makes this turn not on the content of the criminal statute in question, but rather on whether the guidelines assign the particular class of conspiracy to a section other than the general conspiracy section. And while 2E1.5 was part of the guidelines, you know, then they go on to talk about how the guidelines changed. But it seems that, and I asked your opponent, she agreed with me that that was dicta. But what are we to do? I mean, I know it's dicta, but it seems that a panel of this court in the past seemed to think that it didn't turn on the content of the statute itself. How do you respond to that? I think it can be read that way, but it can also be read in the way that we argued in our brief, which is that the underlying methodology of Skowronski is not disturbed given the particular facts of that case. And, again, the larger point here is I don't believe that this case requires the court to ultimately reach that decision. One of the circuits that disagreed with that reasoned that in creating the guidelines provisions, the commission is aware of those statutes that contain an attempt and a conspiracy provision within it. And so it would have listed it or addressed it in the guidelines themselves. And that is a good reason to assume. Of course, assuming we were to reach this issue, what's your response to that reasoning? They were aware of it. They could have either listed it or somehow included in the applicable section. Certainly. But I think you also have to look at Appendix A and the commentary to 2M5.3, which directly speak to this point. So I agree with Your Honor, but I think to take a more comprehensive view of the guidelines, which certainly the commentary and the appendix are part of the guidelines that I think that the fair interpretation is the one advocated by the government at this point, which is that 2M5.3 is the appropriate guideline. Do we need to reach this issue? I'm sorry. I guess I get to the sort of the given that the guideline range was really 240. So whether or not the court had applied to X1.1, can you address the harmless issue? And then very briefly, because I know Judge Robinson has questions. Yes, I do think there's no error. Certainly not plain error here. Even if everything that counsel has asked was applied to X1.1 as a factual matter, I don't think that this particular defendant would have been entitled as a factual matter to the three-point reduction. And when you take the sentencing record in its totality, very comprehensive briefing by both parties, a fairly lengthy sentencing proceeding of which we have the transcript for, it's clear that the 3553A analysis starts from the point of 240 months. There is no anchoring. There is no discussion that, oh, well, because a difference in the guidelines methodology would have changed the ultimate sentence at all. I don't think there's any indication of that in this record, which is quite thorough. So, no, this issue does not need to be reached in order to deny the appeal. Certainly there's no substantive error in the sentence itself. 200 months is well within the range of permissible decisions. It's not substantively unreasonable. The idea that the court only considered a narrow view of what an appropriate sentence would be based on CSER, I don't think that's in the record at all. The court in no way analogized the facts of CSER and explicitly acknowledged that every case is unique. And I think that the 3553A analysis that bears out in the sentencing record shows that that's exactly what the court did. The sentence is below guidelines. It's fair. It's within the range of permissible sentences in prior cases in both the eastern and southern districts. And the issue that counsel is asking the court to reach need not be reached in this case for the district court decision to be upheld. Thank you. I'm sorry. I did have one quick follow-up question. I'm still trying to learn how the commentary and the guidelines and all of this works. Is it your position that when the appendix commentary references a statute as being among the statutory provisions implicated by a guideline section, that means that all convictions under that statutory section by definition are covered by that guideline section, or just that some convictions under that may be covered by that guideline section? I think our position is when the statute expressly prohibits attempt or conspiracy, then yes. That guideline would- So you're not quite answering the question as to how the commentary works. There's this list, and it says this provision implicates these statutes. This implicates these. And so is there a general rule of interpretation that once it says a statute implicates this, all convictions under that statute we can sort of infer are covered by that section, or is it just that some convictions under that statute might be covered in this section? I understand your honest question. I don't know how to answer that. Thank you. Ms. Barth, you've got a minute of rebuttal. And before you start, I just wanted to ask a quick question. So your view is that it was plain error for the district court not to spot this issue and resolve it, right? Yes, Your Honor. So in your view, is it ineffective assistance of counsel for defense counsel not to have spotted this issue? Habeas, this would be point one. It would be hard to answer that question. So the court is on the hook for plain error with the defense counsel did not make a substandard determination by not making this argument? I mean, I wasn't defense counsel below. I know you weren't. I would have thought that you could be candid on this. And I can be candid on it. But the reason I hesitate in answering that question is that the guidelines in this court's case law makes it incumbent on the district court to calculate the guidelines correctly, right? And also to apply the right weight to all of the factors that are relevant to sentencing. Because that burden lies at the district court's feet statutorily and in this court's case law, whether or not defense counsel was ineffective in some ways is largely not an important question here. Because it's whether the judge calculated those guidelines correctly. Obviously, the best practice is if this problem, you know, if both parties had alerted the court or the probation officer had alerted the court about it. But ultimately, it's up to the court to calculate those guidelines correctly regardless of whether- I mean, this would have been a pretty lengthy exchange. And it seems to me we're having a lengthy exchange now on this. And so to not spot the issue, you're saying was plain error. But you're giving a pass. It sounds like you're giving a pass to counsel. I'm not giving a pass to counsel. I just am trying to emphasize the point that the court ultimately has to calculate the guidelines correctly regardless of what the parties bring to the court's attention. That's on the court to do. Okay. And anyway, there were some other points you wanted to make. Let's just get the clock running. Oh. Go ahead. Well, we didn't really get a chance to talk about the national disparity issue. I'd like to address that very briefly if I may. And it sort of plays into the government's comments about how these guidelines really don't impact the 3553 factors. And the sentencing courts bear the burden of making sure all the mandatory 3553 factors are considered. Here, the only sentencing data considered by the court were cases in which the defendants received the maximum possible sentence. And unfortunately, that data was misleading. The government offers no response to the argument that the data it presented to the sentencing judge does not reflect the average national sentence for defendants like Mr. Redzapajic. So in this way, the judge was misled. The judge is supposed to be a check on that, and it does not look like the sentencing court conducted its own inquiry. And I think that is what the statute calls for, a searching inquiry to root out sentencing disparities among defendants nationwide. Mr. Redzapajic was sentenced in 2021, and the U.S. Sentencing Commission has kept data like this for a really long time. It is easily accessible. Had the judge conducted this inquiry, it surely would have informed his sentencing determination. And does that typically, again, I haven't done a district court sentencing before. Does that comparative data, does the judge do the research independently on that? Or do the party, does defendant typically say here's what we've found is the comparative data that you should have in mind? Or does that fall just to the judge to do the research independently? How does that work? I think the parties advocate for a position, right? And what that ends up meaning is sometimes the parties bring in outlier cases. The government is going to bring in higher sentences that support its sentencing position. The defense attorney is probably going to look for the lowest sentence possible. So I guess when it comes to the judge's position, I think there is some independent research that has to be conducted. And 3553A6 applies to judge, applies to the sentencing court. So if the parties fail to provide this data to the court, the court needs to conduct that research on its own. You're not suggesting, though, having been a trial judge, and I'm sure your sentencing is the worst part of it, I think the hardest part. One of the hardest parts of the job is that, yes, you should be, sentences should be comparable. But at the end of the day, the judge is facing an individual defendant with his or her history, that defendant's history, the history of the particular case, the history of the defendant. So it becomes difficult, I think, from a sentencing judge's perspective to, yes, you should consider information. But at the end of the day, the sentence should be individualized to that particular case, that particular defendant. What about this case makes this so aberrant or out of the ordinary? Because some of the cases where there was, admittedly, more conduct, there was a higher sentence imposed. So what makes this so out-extraordinary? For Mr. Resopagic, he received nearly the maximum sentence for this offense. He harmed no one. He was a drug-addled person who had some co-occurring mental health issues. On top of that, I think, just looking at the statistics, and this is laid out in my opening brief, the sentences in this particular circuit tend to be a little bit higher for these terrorist support cases. So I think if we only look at the sentences that happen within districts within this circuit, I don't think we get a really good idea of what the national experience is. And while I agree that the individual before the court is a very important factor, but in order to avoid risking becoming an echo chamber of sorts, it's important to also look at the national experience, and that wasn't done here. Had the court done that, it would have been alerted to the fact that the 200-month sentence it imposed is higher, substantially higher. What's the best case for suggesting that a court has to effectively become the sentencing commission and have an encyclopedic knowledge of all sentences everywhere? I'm not suggesting that, Your Honor. Well, it seems like you are, kind of, I have to say. I mean, it seems to me that these are arguments that were not made by any of the parties, and you're saying that the court, nonetheless, erred by not being able to anticipate the argument you've made now on appeal by resorting to data that you took a fair amount of time to find, I imagine. To be honest, it doesn't take much time to find that data. So I don't think you have to have encyclopedic knowledge. I think that it was also pointed out by defense counsel below that defense counsel believed that the cases that were offered to the judge were not representative of the types of sentences that should be imposed in a case like this one. So it really didn't take much time at all. So I don't want to sound like I'm blaming the judge, but I do want to recognize that 3553A6 is statutory, and it requires that a judge conduct a national review. That's what it means. It's not between co-defendants. It's a national review, and that's what this one is about. So your view is that it requires a national review by a court, and that means what? Yes. What does that consist of? I think district courts will want to know. So what will the national review required of a district judge to avoid being reversed by the court of appeals consist of? I think the easiest way is accessing JSON. That is the U.S. Sentencing Commission's website that allows judges to type in very particular information about a person's criminal history and offense of conviction. And using that analysis, you can pop out a number of defendants who have been sentenced in that particular criminal history category using that particular guideline provision, and that will give you a data point very easily. But, I mean, so the guideline provision for fraud, that would be very workable. All frauds are the same in your view. Guidelines treat all kinds of different frauds under Section 2B1.1. So your view is that that's enough. Just pop into JSON, and then the judge has done his or her duty for the 3553A factors. No, I think that's one tool at the judge's disposal is looking at JSON. The U.S. Sentencing Commission also makes itself available. You can call someone at the U.S. Sentencing Commission and ask for data about a particular offense and a particular guideline. And I think, too, for fraud, it accounts for amount of loss and that sort of thing as well. I'm not suggesting a one-size-fits-all. I'm just saying here, that sort of disparity review, the only disparity review done here looks at cases in which the maximum penalty was imposed. That's it. And that's just not the experience nationwide. And the government didn't offer any sort of response to that argument. The problem with those types of analysis is that it doesn't take into consideration a particular case, the type of crime, the impact of that crime, and any other evidence that the judge, at the time of sentencing, any other, any particular defendant took into consideration. And I think that's the problem with doing that type of analysis, because at the end of the day, if it had been the reverse, you might, you or another defense attorney may be standing before the court saying, no, no, no, no, don't look at the guidelines, don't look at the national data, because my client stands very differently. He's not the typical. So it can kind of cut both ways, you know? And I understand what you're saying. I'm very grateful to be an advocate than a person who wears one of the black robes. But it doesn't change the fact that judges make these sorts of weighty decisions all the time, and the 3553 factors need to be considered, but it doesn't necessarily mean that they need to be weighted the same. And what I'm saying is that this particular factor, which is mandatory consideration, didn't receive the meaningful consideration. All right, we'll leave it there. Thank you both. Thank you. We will reserve decision.